UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23220-CIV-LENARD

**KELVIN ANDRADE,**

    Plaintiff,

vs.

**MIAMI DADE COUNTY, et al.,**

    Defendants.
_____/

**OMNIBUS ORDER GRANTING DEFENDANT MIAMI DADE COUNTY'S MOTION TO DISMISS AMENDED COMPLAINT (D.E. 33) AND GRANTING DEFENDANT OFFICERS' MOTION TO DISMISS AMENDED COMPLAINT (D.E. 34)**

**THIS CAUSE** is before the Court on Defendant Miami Dade County's Motion to Dismiss Amended Complaint (D.E. 33) and Defendant Officers' Motion to Dismiss Plaintiff's Amended Complaint (D.E. 34), both filed on November 15, 2010. Plaintiff Kelvin Andrade filed Responses (D.E. 35 and 36) to both Motions to Dismiss on December 2, 2010. Defendants filed their respective Replies (D.E. 37 and 38) on December 13, 2010. Upon review of the Motions to Dismiss, the Responses, the Replies and the record, the Court finds as follows.

**I.    Factual and Procedural Background**

The events which gave rise to this action took place on September 23, 2005. (Am. Compl. ¶ 10, D.E. 32.) That evening, Plaintiff allegedly suffered a psychotic break, stripped off all of his clothing while outdoors and commenced ranting and engaging in other bizarre

and alarming behavior. (*Id.* ¶ 10.) His neighbors called the police and Defendants Natasha Ocasio, Eric Goldberg, J.C. Rodriguez and Eddie Torres, all police officers in the Miami-Dade Police Department, responded. (*Id.* ¶ 12.) Upon their arrival, Ocasio alone approached Plaintiff and "shined a flashlight in his eyes, seized him, and attempted to take him into custody." (*Id.* ¶ 14.) Plaintiff, in his agitated state, resisted Ocasio's attempted arrest. (*Id.* ¶ 15.) During the ensuing struggle, Ocasio wrestled Plaintiff to the ground. (*Id.* ¶ 16.) Officers Goldberg, Rodriguez and Torres then allegedly beat Plaintiff with asps and tased him several times. (*Id.* ¶ 17.) During the struggle, Ocasio drew her firearm and shot Plaintiff twice. (*Id.* ¶ 18.)

On September 21, 2009, Plaintiff filed his Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, alleging various violations of his civil rights pursuant to 42 U.S.C. § 1983. Defendants removed the action to this Court on October 23, 2009, alleging that this Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). (Notice of Removal ¶ 3, D.E. 1 (also alleging that this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367).) On September 30, 2010, the Court granted Defendants' Motions to Dismiss (D.E. 24) but allowed Plaintiff to file an Amended Complaint to remedy all counts that were dismissed without prejudice.

Plaintiff's Amended Complaint alleges claims of Excessive Force pursuant to 42 U.S.C. § 1983 (Count I), a state law claim of excessive force (Count II) and Unlawful Seizure pursuant to 42 U.S.C. § 1983 (Count III). Defendants now move to dismiss the

Amended Complaint.[1]

## II.   Defendants' Motions to Dismiss

### A.   Defendant Officers' Motion to Dismiss

Defendants Ocasio, Goldberg, Rodriguez and Torres move to dismiss the § 1983 excessive force claim against them (Count I).  First, Ocasio argues that she is entitled to qualified immunity from suit on this claim.  (Officers' Mot. at 3-6.)  Specifically, she behaved reasonably during her encounter with Plaintiff on September 23, 2005.  (*Id.*)  Goldberg, Rodriguez and Torres also argue that they behaved reasonably with respect to their use of force and therefore are subject to qualified immunity.  (*Id.* at 8-9.)

Moreover, the officers contend that Plaintiff should not be allowed to transform the previously dismissed failure to intervene claim against them into an excessive force claim by completely changing his factual allegations.  (*Id.* at 6-8.)[2]  They cite the language of this Court's Order to mean that Plaintiff would only be allowed to replead his failure to intervene claim against Goldberg, Rodriguez and Torres.  (*Id.*)[3]

---

[1]   Defendant Ricardo Toledo, still named in the style of the Amended Complaint, has been dismissed from this action.

[2]   Indeed, in his original Complaint (D.E. 1), Plaintiff alleged that Goldberg, Rodriguez and Torres "kept their distance" and "failed to intervene" in his struggle with Ocasio.

[3]   The language from the September 30, 2010 Order: "Accordingly, this Court finds that the Complaint does not adequately state a claim against Defendants Goldberg, Rodriguez and Torres for failure to intervene. Count II is dismissed without prejudice and Plaintiff shall be granted leave to amend . . . this claim to cure its deficiencies." (Order at 16.)

3

### B. Miami-Dade County's Motion to Dismiss Complaint

Defendant MDC moves to dismiss Plaintiff's claims of excessive force (Count II) and § 1983 unlawful seizure pursuant to official policy (Count III).

MDC argues that Plaintiff cannot adequately plead municipal liability under § 1983 because he fails to identify an official county policy, a final policymaker for the county or demonstrate that MDC has officially promulgated the policy or tolerated the unofficial custom which led directly to his injuries. (*Id*. at 5-6, 8-10.) Nor does Plaintiff identify an MDC official who speaks with final policymaking authority concerning the alleged acts which caused the constitutional violations. (*Id*. at 6-8.) Similarly, MDC contends that Plaintiff's pleadings cannot adequately support the failure to train claims against it. (*Id*. at 11-13.) It argues that Plaintiff does not allege any widespread practice of which MDC was aware and deliberately indifferent to. (*Id*.) MDC notes that Plaintiff's Amended Complaint contains large chunks copied and pasted from his original Complaint, found previously to be deficient. (*Id*. at 2-3.)

MDC next argues that Plaintiff's state law excessive force claim must be dismissed. Insofar as this claim is based on the actions of Goldberg, Rodriguez and Torres, it must fail since this Court has already dismissed the failure to intervene claim against MDC with prejudice. (*Id*. at 13.)

Furthermore, Florida law does not support a claim for excessive force; rather, Plaintiff must plead his claim as a battery. (*Id*. at 14.) Should the Court transform Plaintiff's excessive force claim into one of battery, it should still dismiss the claim as the officers are

4

only liable for force that is "clearly excessive" – not the case here. (*Id*. at 14 (citing *Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006). MDC reminds the Court that it previously found Ocasio's use of force reasonable and should do so again. (*Id*. at 14-15.)

### C. Plaintiff's Response to the Motions to Dismiss

Plaintiff's Responses are short on law but strenuously plead for this Court to allow discovery to develop the record further and fill in any gaps. He admits that he has changed his factual allegations against Goldberg, Rodriguez and Torres and credits the new claim to his lack of memory and a desire to correct the record, not the Court's previous dismissal of his failure to intervene claim.

## III. Standard of Review

### A. Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Although it is not necessary for the complaint to contain detailed factual allegations, the "plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotations omitted). The facts set forth must be sufficient to push the claims from the realm of "conceivable to plausible." *Id.* at 570. In recent decisions, the Eleventh Circuit further advised that courts may make reasonable inferences in a plaintiff's favor, but they are not required to draw plaintiff's inference. *Sinaltrainal v. Coca-Cola*, 578 F.3d 1252, 1260 (11th Cir. 2009) (quotations

omitted); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Likewise, "unwarranted deductions of fact" in a complaint may not be admitted as true for determining the sufficiency of the allegations. *Aldana*, 416 F.3d at 1248; *see also Ashcroft v. Iqbal*, 556 U.S. ---, 129 S. Ct. 1937, 1951 (2009)

### B. Qualified Immunity

The qualified immunity defense is an immunity from suit, not merely damages. *March v. Butler County, Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc). Courts are generally urged to apply the affirmative defense of qualified immunity at the earliest possible stage in litigation, including at the dismissal stage. *See March,* 268 F.3d at 1022; *see, e.g., Chesser v. Sparks*, 248 F.3d 1117 (11th Cir. 2001) (reversing the district court's denial of defendant's motion to dismiss plaintiff's freedom of expression and freedom of association claims on the basis of qualified immunity). Unless the plaintiff clearly alleges a violation of established law in his complaint, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

A public official asserting the defense of qualified immunity must first establish that he was "engaged in a 'discretionary function' when he performed the acts of which the plaintiff complains." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004). There is no dispute here that Defendants Ocasio, Goldberg, Rodriguez and Torres were engaged in a discretionary duty when they encountered and subsequently arrested Plaintiff on the evening of September 23, 2005. *See Hadley v. Gutierrez*, 526

F.3d 1324, 1329 (11th Cir. 2008).  The next step of the Court's inquiry is to determine whether their conduct violated a constitutional right and the right was clearly established.  *Durruthy v. Pastor*, 351 F.3d 1080, 1087 (11th Cir. 2007).  Phrased another way, did the Defendants act "according to means that were within [their] power[?]"  *Khoury v. Fernandez*, 2008 U.S. Dist. LEXIS 33195, *7 (S.D. Fla. Apr. 22, 2008); *see also Holloman*, 370 F.3d at 1265-66.

## IV. Discussion

### A. Count I - Excessive Force (42 U.S.C. § 1983)

#### 1. Ocasio

Plaintiff claims that his being shot twice by Ocasio constituted excessive force.  According to him, the presence of a naked, ranting man should have put her on notice that they were dealing with an insane person, therefore the use of deadly force – shooting the Plaintiff twice – was excessive under the *Fourth Amendment* given the circumstances.

Focusing on Plaintiff's factual allegations, the Court notes that Ocasio and her colleagues encountered the Plaintiff while he was "completely nude," "ranting" and "engaging in other bizarre behavior that alarmed his neighbors."  (Am. Compl. ¶¶ 10-11.)  Ocasio attempted to seize Plaintiff in order to arrest him.  (*Id*. ¶ 14.)  Plaintiff reacted to Ocasio by resisting her efforts.  (*Id*. ¶ 15.)  Ocasio ended up shooting Plaintiff twice.  (*Id*. ¶ 18.)

The Court begins its review of the excessive force claim against Ocasio by first determining if the facts, taken in the light most favorable to Plaintiff, establish that Ocasio

violated Plaintiff's constitutional rights. "The *Fourth Amendment*'s freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force during the course of an arrest." *Lee*, 284 F.3d at 1197 (citing *Graham v. Connor*, 490 U.S. 386,388 (1989)). The question is whether Ocasio behaved reasonably in the light of the circumstances before her. *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002).

      The Eleventh Circuit has stated that "*Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight." *Lee*, 284 F.3d at 1198. Courts interpreting the Fourth Amendment in the context of excessive force have long recognized that the responsibility to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical force or threat of same. *Id.* "Use of force must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Vinyard*, 311 F.3d at 1347 (internal quotation marks and citations omitted).

      In *Tennessee v. Garner*, the seminal case on when deadly force can be used against a fleeing suspect, the Supreme Court said that "if the suspect threatens the officer with a weapon or there is probable cause to believe that [the suspect] has committed a crime involving the infliction or threatened infliction of serious physical harm," then it is constitutionally permissible to use deadly force to prevent escape of the suspect. 471 U.S.

1 (1985). Because the Constitution permits the use of deadly force to prevent a violent suspect from escaping, "the Constitution must also permit the use of deadly force against a suspect who poses not merely an escape risk (because he is not yet in police control), but also an imminent threat of danger to a police officer or others." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003) (affirming the grant of summary judgment based on defendant police officer's qualified immunity where the officer shot plaintiff following plaintiff's failure to submit to police authority and posed a continual threat of further violence). In order to be entitled to qualified immunity for the use of deadly force, an officer need have only "arguable probable cause," based upon the information he or she possessed at the time of the incident. *See St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002) (reversing the district court's finding that defendant police officer was entitled to qualified immunity defense where he shot decedent through an open window while decedent was not threatening him or in a position of flight).

Examining whether Ocasio's use of deadly force was reasonable, the Court recognizes that "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Long v. Slaton*, 508 F.3d 576, 580 (11th Cir. 2007) (reversing the district court's denial of defendant police officer's motion to dismiss where defendant fired his weapon at a mentally unstable man who had taken control of a police cruiser); *see Graham*, 490 U.S. 386, 397. Consequently the Court is "loath to

second-guess the decisions made by police officers in the field." *Vaughan v. Cox*, 343 F.3d 1323, 1331 (11th Cir. 2003).

According to the facts alleged in Plaintiff's Complaint, the Court concludes that Ocasio's use of force was objectively reasonable under the *Fourth Amendment*. Although Ocasio's decision to fire her weapon risked grave injury to Plaintiff, that decision was not outside of the range of reasonableness in light of the potential danger posed to her, any bystanders and the public, had Plaintiff overpowered her during their struggle and took control of her gun. *Cf. McCormick*, 333 F.3d at 1246 (Eleventh Circuit affirmed summary judgment in favor of police officer noting that his shooting the plaintiff was reasonable in response to his fear that plaintiff might have access to his firearm and potentially be a threat to the officer and others). Considering that Plaintiff admitted resistance to Ocasio's attempt to apprehend him, his incoherence and volatility, the ensuing struggle and the threat caused by Plaintiff's condition and behavior, this Court finds reasonable police officers in Ocasio's position could have viewed Plaintiff as dangerous. *See Long*, 508 F.3d at 581.

Plaintiff's Amended Complaint now omits the words "violent," "aggressive" and that he struck Ocasio. But the imminent danger posed by Plaintiff during his resistance does not dissipate due to his finessed pleadings. Plaintiff does not allege that he ever stopped resisting or struggling with Ocasio. In fact, in his Response he indicates that at one point, he was on top of Ocasio. (Resp. to MDC Mot. at 10.) The Court must assess the threat of danger to officers and other persons if the struggle continued, not merely at

the moment of the shooting.  *Cf. Long*, 508 F.3d at 581 (discussing threat of continuing car chase had the plaintiff been allowed to flee in a stolen police cruiser).

In *Long v. Slaton*, the police were called by the father of a man (Long) who was suffering a psychotic episode.  *Id.* at 578.  Long's father explained to Deputy Slaton that his son should be committed.  *Id.*  Slaton attempted to arrest Long, but Long refused and jumped inside Slaton's unlocked police cruiser.  *Id.* at 579.  Slaton then pointed his pistol at Long and ordered him to get out of the cruiser, threatening to shoot him if he did not comply.  *Id.*  Long shifted the cruiser in reverse and began backing away down the driveway toward the road.  That is when Slaton fired three shots at Long, killing him.  *Id.*  The Eleventh Circuit found Slaton's use of force objectively reasonable under the Fourth Amendment and reversed the district court's denial of Slaton's motion to dismiss.  *Id.* at 581, 586.

The circumstances of Plaintiff's are analogous to and even surpass *Long* in the immediacy of danger posed.  Long stole a police cruiser.  Plaintiff could have gained control of Ocasio's gun.  Long was fleeing from a police officer.  Plaintiff was actively struggling with a police officer.  Deputy Slaton knew of Long's psychotic episode.  It is unknown if Ocasio knew of Plaintiff's mental infirmity.  The Court is therefore satisfied that the circumstances of this case, as compared to *Long*, support the finding that Ocasio's use of force was reasonable under the *Fourth Amendment*.

Moreover, Count I still reads like a *res ipsa loquitor* claim, requiring the Court to

11

engage in unwarranted deductions of fact in order to find that a claim has been stated, an improper exercise at this stage. *See Aldana*, 416 F.3d at 1248. Without further details, the Court declines to second guess the actions of a police officer tasked with controlling a suspect who continuously struggled and resisted arrest. *Cf. Vaughan*, 343 F.3d at 1331.

Accordingly, the Court finds that Defendant Ocasio's use of deadly force was not objectively unreasonable in light of the circumstances and she is entitled to the qualified immunity defense. Count I of the Complaint is dismissed with prejudice as to Defendant Natasha Ocasio.

### 2. Rodriguez, Goldberg and Torres

Instead of repleading the failure to intervene claim against Rodriguez, Goldberg and Torres, Plaintiff transforms his claim against them into an affirmative excessive force claim. The Court finds Plaintiff's revised pleading to be in bad faith for three reasons.

First, the Court's September 30, 2010 Order dismissed the failure to intervene claim and directed Plaintiff to file an amended pleading to cure *that* claim's deficiencies. (*See* Order at 16 (emphasis added).) In the previous Order, the Court advised Plaintiff that his claim would be strengthened with, *inter alia*, details such as the duration fo struggle and the distance of the officers from the struggle.

Even if the Court's directive was not clear, allowing Plaintiff to amend his complaint to aver contradictory facts, as opposed to averring a newly discovered fact or an alternative theory of the case, would be an attempt to manipulate the course of

litigation. Here, the facts pled by Plaintiff are not new, nor are they an alternative theory of the case. Instead, the allegations that Rodriguez, Goldberg and Torres affirmatively beat and tased Plaintiff are contradictory to those pled in the initial failure to intervene claim that was "discounted on a motion to dismiss." *See Wallace v. N.Y. City Dep't of Corr.*, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996).

Finally, Plaintiff first mentions being tased about a dozen times in his Omnibus Response to the first set of motions to dismiss. (Omnibus Resp., D.E. 10, at 7.) His awareness of this fact nearly eleven months prior to this Court's September 30, 2010 Order belies his argument that his amended excessive force claim is not in response to the Court's ruling. (*See* Resp. to Officers' Mot. at 3.) Had he truly sought to "allege the truest possible version of events," Plaintiff would have amended his complaint prior to the Court's ruling on the initial motions to dismiss rather than taking his shot with a failure to intervene claim. (*Id.*) The Court therefore declines to accept the contradictory and self-serving facts as relating to Plaintiff's excessive force claim against Rodriguez, Goldberg and Torres at this stage. See Wallace, 1996 WL 586797, at *2.

Count I of the Complaint is therefore dismissed with prejudice as to Defendants Rodriguez, Goldberg and Torres.

### B.     Count II - Excessive Force Against MDC

MDC moves to dismiss Count II under several theories. First, it argues that Florida state law does not recognize the tort of excessive force and that Plaintiff should

have pled intentional battery by Ocasio.  (MDC Mot. at 13.)  Second, MDC notes that Plaintiff's claim against it for excessive force based on the conduct of Goldberg, Rodriguez and Torres has already been dismissed with prejudice.  (*Id*.; *see* Sept. 30, 2010 Order at 19.).  Third, MDC argues that Ocasio's use of force was not "clearly excessive" and therefore no claim can be stated by Plaintiff.  (MDC Mot. at 14 (citing *Davis*, F.3d at 768).)

MDC is correct in its first two contentions.  As to Plaintiff's excessive force claim based on the conduct of Ocasio, the Court will assume that Plaintiff has properly styled it as a state law intentional battery claim and consider whether her use of force was "clearly excessive."

Florida case law has traditionally afforded an officer's use of force in effecting a lawful arrest the presumption of good faith.  *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).  However, where the force used is clearly excessive, the officer is liable for damages and the ordinarily protected use of force by the officer "is transformed into a battery."  *Id*.; *see Mazzilli v. Doud*, 485 So. 2d 477, 481 (Fla. 3d DCA 1986).  Suits for "excessive force necessarily involve[] the intentional tort of battery."  *Sanders*,  672 So. 2d at 47 (citations omitted).

 "The Court must view the officer's actions from the 'perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight' and 'must embody allowance for the fact that police officers are often forced to make split-second judgments

14

– in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.'" *Beshers v. Harrison*, 495 F.3d 1260, 1266 (11th Cir. 2007) (quoting *Graham*, 490 U.S. at 396-97).  Having already found that Ocasio's use of force to subdue a struggling, volatile, incoherent Plaintiff who at one point was on top of her was reasonable under the circumstances , *supra* at **IV.A.1**, the Court must find that Plaintiff has not alleged sufficient facts to overcome the presumption of good faith afforded to her conduct; therefore Plaintiff's claim of battery fails.  *See also McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (11th Cir. 2003).

        **C.**       **Count III - Unlawful Seizure Claim Against MDC (42 U.S.C. § 1983)**

Count III alleges MDC's municipal liability under § 1983 for failure to train its officers in handling a mentally ill person and its willful decision to refuse to properly address incidents of police misconduct.  (Compl. ¶ 44.)   Plaintiff identifies three areas of MDC's policy which contributed to his injuries:  (1) lack of training in how to safely confront mentally ill subjects; (2) lack of training in proper hold and use-of-force techniques when dealing with unarmed subjects; [and] (3) failure to discipline, counsel and document incidents in response to excessive uses of force by its police officers."  (*Id.* ¶ 45.)

For MDC to be held liable under §1983, Plaintiff must allege and ultimately prove that the constitutional violations which injured him resulted from (1) an officially promulgated MDC policy or (2) an unofficial custom or practice of MDC shown through

the repeated acts of a final MDC policy maker. *See Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003) (citing *Monell v. Department of Social Servs.,* 436 U.S. 658, 694 (1978); *Brown v. Neumann,* 188 F.3d 1289, 1290 (11th Cir. 1999).

Plaintiff must identify an official County policy that allegedly caused him injury. *See Perez v. Metro. Dade Cty.*, 2006 U.S. Dist. LEXIS 96426, at *4 (S.D. Fla. Apr. 28, 2008) (Moreno, C.J.). The mere mention of policy, practice or custom is not enough, for "a plaintiff must do something more than simply allege that such an official policy exists." *Perez*, 2006 U.S. Dist. LEXIS, at *4 (citation omitted); *Villanueva v. City of Ft. Pierce,* 24 F. Supp .2d 1364, 1368 (S.D. Fla. 1998). The plaintiff must also allege that the policy or course of action was "consciously chosen or officially sanctioned or ordered." *Riebsame v. Prince,* 267 F. Supp. 2d 1225, 1233 (M.D. Fla. 2003) (internal quotations omitted); *see also Grier v. State of Florida,* 2005 U.S. Dist. LEXIS 45354, at *3 (M.D. Fla. Nov. 1, 2005) (dismissing a § 1983 claim where plaintiff failed to allege "any specific policy or custom of the city that led to the alleged violation").

Here, Plaintiff concedes that MDC would not affirmatively promote the allegedly deficient policies that caused his harm (*See* Resp. to MDC Mot. at 2-3.). Without an official MDC policy to point to, "[p]laintiff must allege an unofficial custom or practice shown through the repeated acts of a final policymaker for the county." *Sanchez v. Miami-Dade County*, 2007 U.S. Dist. LEXIS 46346, *6 (S.D. Fla. Mar. 28, 2007) (King, J.). Given a second chance to satisfy these pleading requirements, Plaintiff does not identify any officials who openly or tacitly approved of the alleged actions of Defendants,

16

much less a final policymaker.

Lacking an identified official policy and an alleged MDC policymaker, Plaintiff must then allege that the MDC's acts and customs were so widespread and longstanding that MDC's policymakers must have known and that they could be considered unofficial practice. *Id.* at *7. Such a claim requires allegations that MDC was deliberately indifferent to known and repeated of violations of constitutional rights. *See Moore*, 502 F. Supp. 2d at 1231. Plaintiff must plead that MDC had "subjective knowledge" of a risk of serious harm and consciously disregarded that risk by engaging in conduct that is more than mere negligence. *See id.*; *Gold,* 151 F.3d at 1350.

Here, Plaintiff makes only general and conclusory allegations: "[a]s documented and publicized in the media" and "[t]he series of events recited in the previous paragraphs is one of many similar incidents where [MDC] police officers commit bad acts." (Compl. ¶¶ 48, 63.) Such conclusory and unsupported allegations are insufficient as a matter of law, and are routinely dismissed. *See, e.g., Sanchez,* 2007 U.S. Dist. LEXIS at *8 (finding that "plaintiff has alleged nothing to show that the incident complained of was not an isolated incident"). Proof of "a single incident of unconstitutional activity" cannot suffice under *Monell* to impose liability on MDC. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 824 (1985); *Grech v. Clayton County,* 335 F.3d at 1330 (a single incident would not be so pervasive as to be a custom or practice); *see Sanchez*, 2007 U.S. Dist. LEXIS at *8.

Similarly, MDC would only be liable for a failure to train or supervise only when

its "official policy" causes a constitutional violation. *Monell,* 436 U.S. at 694. As discussed above, Plaintiff has two methods by which to establish MDC's policy: identify either (1) an officially promulgated MDC policy or (2) an unofficial custom or practice of MDC shown through the repeated acts of a final policymaker. *Grech,* 335 F.3d at 1329. "A custom or practice, while not adopted as an official formal policy, may be so pervasive as to be the functional equivalent of a formal policy." *Id.* at 1330 n.6.

Plaintiff argues that the identification of a policymaker in the Amended Complaint is unnecessary.  (Resp. to MDC Mot. at 3 (citing *Grech*, 335 F.3d at 1330 and *Nichols v. Prather*, 650 S.E.2d 380, 385 (11th Cir. 2007).  Plaintiff apparently conflates the determination of official policymaker – a factual determination proper at the summary judgment stage –  with the necessity of alleging an official policymaker as an element of stating § 1983 claim.  *See Quintanilla v. Miami-Dade County*, 2009 U.S. Dist.101501, at ** 3-4 (S.D. Fla. Oct. 14, 2009) (Moreno, J.) (dismissing complaint for failure to allege an official policymaker for MDC); *Moore*, 2007 U.S. Dist. LEXIS 95892, at **17-18 (S.D. Fla. Dec. 9, 2007) (Gold, J.) (setting forth elements necessary to withstand a motion to dismiss).  Plaintiff has now twice failed to plead the required elements of a § 1983 policy/failure to train claim and given his reluctance[4]  to allege a final policy maker and actual, repeated incidents similar to the one complained of, the Court finds this claim

---

[4]     Over three pages of Plaintiff's Response to MDC's Motion is devoted to the copying and pasting of allegations from his Complaint, as if to drive this point home.  (*See* Resp. to MDC Mot. at 6-10.)

must be dismissed with prejudice.[5]

Consistent with the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant Miami Dade County's Motion to Dismiss Amended Complaint (D.E. 33), filed on November 15, 2010, is **GRANTED**.

2. Defendants Natasha Ocasio, Eric Goldberg and J.C. Rodriguez' Motion to Dismiss Plaintiff's Amended Complaint (D.E. 34), filed on November 15, 2010 is **GRANTED**.

3. Plaintiff Kelvin Andrade's Amended Complaint (D.E. 32), filed on November 11, 2010, is **DISMISSED** with prejudice.

4. This Case is now **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of September, 2011.

                                                                        _/s/ Joan A. Lenard_
                                                                       **JOAN A. LENARD**
                                                                    **UNITED STATES DISTRICT JUDGE**

---

[5] Plaintiff's attorney boasts that "[t]here is no way known to the undersigned, after litigating these cases for 18 years, of pleading these elements, and this attorney, who has tried and/or settled approximately 20 of these cases, has never had a complaint such as this dismissed with prejudice for failing to adequately plead the pattern and practice issue." (Resp. to MDC Mot. at 5.) This is the second time Plaintiff's attorney has attempted this irrelevant and hubristic argument. The Court remains unimpressed. As of the date of today's order, the aforementioned statement will no longer be accurate.